## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JUDY KOPFF** <br> 2939 Newark Street, N.W. <br> Washington, D.C. 20008 | * <br> <br> * | |
| **JOHN HOFFMAN** <br> 2948 Macomb St., NW <br> Washington, D.C. 20008 | * <br> <br> * | |
| **GUATEMALA HUMAN RIGHTS** <br> **COMMISSION/USA** <br> 3321 12th Street, N.E. <br> Washington, D.C. 20017 | * <br> <br> * <br> <br> * | Case # |
| *Plaintiffs* | * | |
| v. | * | |
| **ROBERT BATTAGLIA** <br> 2830 Shore Drive, Unit #6 <br> Virginia Beach, VA 23451 | * <br> <br> * | |
| **THOMAS ROTH** <br> 24931 Via Sonoma <br> Laguna Niguel, CA 92677 | * <br> <br> * | |
| **JEFFREY DUPREE** <br> 1236 Jason Drive <br> Lompoc, CA 93436-8221 | * <br> <br> * | |
| **FRANK FRAPPIER** <br> 33 Encore Court <br> Newport Beach, California 92663-2364 | * <br> <br> * | |
| **MATTHEW BUECLER** <br> 46 Raven Lane <br> Aliso Viejo, California 92656-1887 | * <br> <br> * | |
| **JOSEPH A. GARSON** <br> 27300 Willowgreen Court <br> Franklin, Michigan 48025-1787 | * <br> <br> * | |
| **KEVIN KATZ** <br> 31 Lagunita Drive <br> Laguna Beach, California 92651-4237 | * <br> <br> * | |
| **AHMED SADIQ** <br> 1409 S. Jasmine Ave. <br> Ontario, CA 91762-5301 | * <br> <br> * | |
| **ERWIN DASS** <br> 17383 Centinali Aisle <br> Irvine, California 92606 | * | |

| | |
|---|---|
| **GARRY ANZAROOT** | * |
| 600 Reisterstown Road | |
| Baltimore, Maryland 21208-5104 | * |
| **GLOBAL COMMUNICATIONS** | * |
| **CONSULTING CORPORATION** | |
| 25 Kilmer Drive | * |
| Suite 217 | |
| Morganville, N.J. 07751-1561 | * |
| **MICHAEL FRANKLIN** | * |
| 25 Kilmer Drive | |
| Morganville, N.J. 07751-1561 | * |
| **DOUG KELLER** | * |
| 25 Kilmer Drive | |
| Morganville, N.J. 07751-1561 | * |
| **MATT CLEMETE** | * |
| 25 Kilmer Drive | |
| Morganville, N.J. 07751-1561 | * |
| **CHRIS RICCA** | * |
| 25 Kilmer Drive | |
| Morganville, N.J. 07751-1561 | * |
| **FLORIDA RESERVATIONS INC.** | * |
| P.O. Box 941990 | |
| Maitland, Florida 32794 | * |
| Resident Agent: | * |
| Jason Giza | |
| 1016 Providence Lane | * |
| Oviedo, FL 32765 | |
| | * |
| *Defendants* | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

The Plaintiffs, through counsel, Michael C. Worsham, Esq., sue the Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), related FCC regulations, and the D.C. Consumer Procedures and Protection Act, D.C. Code § 28-3904 et seq., and state that:

## PARTIES

1. Plaintiffs JUDY KOPFF, JOHN HOFFMAN, and the GUATEMALA HUMAN RIGHTS, COMMISSION/USA ("GHRC") are residents of the District of Columbia.

2. Plaintiffs and/or companies they work for, own or control use fax machines located exclusively in D.C. and have control over their use.

2

**DEFENDANTS**

3. ROBERT BATTAGLIA worked for Fax.com or other companies associated with Fax.com and/or created by KEVIN KATZ and/or other persons at Fax.com, Inc.

4. THOMAS ROTH is or was the Chief Financial Officer of Fax.com, Inc.

5. JEFFREY DUPREE is or was the head of sales at Fax.com, Inc.

6. FRANK FRAPPIER is or was a salesman at Fax.com, Inc.

7. MATTHEW BUECLER is or was a salesman at Fax.com, Inc.

8. JOSEPH A. GARSON is or was the Vice-President of Fax.com, and of an entity called Everglade Enterprises, LLC (Everglade).

9. KEVIN KATZ was a Founder (or co-founder along with one Eric Wilson[1]) and President of Fax.com, Inc., which was a DE corporation, located in Aliso Viejo, CA, in the business of obtaining fax numbers through electronic means and sending unsolicited fax ads to those fax numbers; creating graphic and text content for faxes, telephone solicitations through automated-dialing, and related marketing services. In October 2004. Fax.com was shut down by a federal court in California. Several defendants named herein worked for Fax.com.

10. AHMED SADIQ was the chief programmer and an employee of Fax.com, Inc.

11. GARRY ANZAROOT is a Maryland resident and principle creator of a Florida company called United States (Voice) Mail & Fax Service Corporation..   .

12. GLOBAL COMMUNICATIONS CONSULTING CORPORATION (GCCC) is a New Jersey corporation engaged in providing telecommunication services.

13. MICHAEL FRANKLIN (President), DOUG KELLER (CEO), CHRIS RICCA (V.P. of Operations), and MATT CLEMETE are employees and/or officers of GCCC.

14. FLORIDA RESERVATIONS INC. (FRI) is a Florida company run by Doug Kaplan and a former client advertiser of Fax.com, Inc.

15. The individual Defendants named herein are sued for their personal actions and/or inactions

---

[1] Eric Wilson is referenced in this suit , but not named because he declared bankruptcy on March 18, 2005 in the U.S. Bankruptcy Court in Idaho, Case # 05-972-TLM.

and involvement in assisting with, facilitating, allowing and causing the violations or torts complained of herein in Maryland, and not solely because of their titles or positions as an employee, manager, officer or director of any corporate entities named herein.

## JURISDICTION

16. Jurisdiction in Federal court is pursuant to 28 U.S.C. § 1332 because the amount in controversy between the Plaintiffs and the Defendants is greater than $75,000, and all parties are citizens of different states. The Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S. Code § 227(c)(5) provides for a private right of action for violations of the TCPA and for violations of the regulations promulgated pursuant to the TCPA by the Federal Communications Commission (FCC) at 47 C.F.R. Part 64, Subpart 1200.

17. Subject matter jurisdiction over Plaintiff GHRC's claims is supplemental pursuant to 28 U.S.C. § 1367, as the GHRC's claims are so related to claims in this action that they form part of the same case or controversy under Article III of the U.S. Constitution.

18. Venue is proper in the District of Columbia because all the violations alleged and damages to Plaintiffs took place in the District, and the Defendants regularly conduct or contract or arrange to provide business or provide goods or services within the District, or to assist others who provide goods or services or solicit those in the District, including but not limited to the sending of fax advertisements into the District.

## STATEMENT OF ALLEGED FACTS

19. The Defendants or their agents sent, caused to send, conspired to send, or aided and abetted the sending of hundreds of thousands of unsolicited fax ads to D.C., including at least 75 faxes to Plaintiff Kopff, at least 21 to Plaintiff Hoffman, and at least several faxes to the GHRC (during 2001), to the telephone facsimile machines of Plaintiffs and/or companies they own or control, without the Plaintiffs' prior express invitation or permission or consent.

20. The unsolicited faxes advertised, *inter alia*, travel services and packages, mortgages or loans, ink jet and toner cartridges, stocks, Quickbook seminars, cell phones or cellular service, furniture, and opportunities to make money.

21. Plaintiffs together received over one hundred unsolicited fax ads from Defendants.

22. All or most of the unsolicited faxes sent by Defendants to Plaintiff and others in D.C. violate 47 U.S.C. § 68.318 because they failed to clearly identify either (1) the business, entity or individual sending the faxed message, or (2) the number of the sending machine or the business, entity or individual.

23. Defendants Battaglia, Katz, and Garson along with others obtained the fax or phone numbers of persons in D.C. including several or all of the Plaintiffs by using a "Faxcaster" network of computers and other equipment which systematically dials phone numbers to test whether a fax machine is connected to the phone line, and then adding each fax number identified to a database for future fax broadcasts to those numbers.

24. Defendants' Faxcaster computer network was used to send faxes to Plaintiff and to others in D.C., and includes computers located in or close enough to D.C. to enable Defendants to sent the faxes without incurring long distance toll charges.

25. The Faxcaster system calls of faxes to persons very late at night or in the early morning hours in a disruptive and annoying manner, and with Caller ID usually either not transmitted or intentionally blocked by Defendants.

26. Robert Battaglia contracted with Verizon D.C., Inc. or other phone companies to take out many phone accounts in his name and other "hosts" to facilitate the Faxcasting, and paid the bills for those accounts, and was later reimbursed by Kevin Katz or companies controlled by him. Battaglia ran a website called www.moneyforfax.com, but later used a California company called Telcom Tech Support created with the aid of Katz for these activities.

27. Robert Battaglia had received complaints and/or was otherwise aware that many persons were upset at being called by the Faxcaster equipment he arranged to make calls to search for fax numbers, including from police visits or calls to Battaglia. Battaglia helped arrange a prerecorded message for people to hear when they called to complain about Faxcaster calls.

28. Several people who happened to be named Battaglia received complaints, harassment, and even a death threat, because persons wrongly blamed them for Faxcaster calls made through Verizon accounts created by Defendant Robert Battaglia.

29. Prior to sending Plaintiff many of the faxes in this suit, Fax.com and its advertiser clients, as well as Katz and Wilson, had been sued for sending unsolicited advertisement faxes by

5

other private citizens, and State Attorney Generals.

30. Prior to sending Plaintiff the faxes in this suit, Kevin Katz and Fax.com and/or its clients had been cited six times by the Federal Communications Commission for sending unsolicited advertisements in violation of the TCPA, and were later fined $5.4 M by the FCC in 2004.

31. To evade the law and lawsuits, sometime during 2002 to 2003, Katz, Wilson, Roth, and Garson primarily, created or used several other companies to send faxes and for various other related activities including fax number removal, and forward leads, including Data Research Systems, Telecom Tech Access, Telecom Tech Support, Impact Marketing, Lighthouse Marketing, Everglades Enterprises, and Tech Access Systems Corp.

32. Katz, Wilson, Roth, Frappier, Buecler, Dupree, Sadiq, Dass, Garson, Battaglia, Anzaroot, GCCC, Franklin, Keller, Ricca, and Clemete were fully aware that unsolicited faxes were being sent, and generally about how faxes were sent out.

33. Katz, Wilson, Roth, Garson, Battaglia, Anzaroot, GCCC, Franklin, Keller, Ricca, and Clemete assisted in arranging or paying for locations or billing for the computers and/or phone lines used in the Faxcaster network, including payment to persons for hosting computers used as part of the Faxcaster network to send faxes, including faxes sent to Plaintiffs and others in D.C..

34. Defendant Ahmed Sadiq wrote, reviewed or approved of programs and queries and/or oversaw the writing of computer programs or queries used by Fax.com to direct or determine where faxes are sent by Fax.com, and has knowledge of and control over how Fax.com sent faxes, and was involved in managing the database of fax numbers used..

35. Defendant Erwin Dass was a graphics designer for several years at Fax.com who designed the content of the unsolicited faxes.  On information and belief, Plaintiffs assert that Dass obtained Fax.com's fax number database when it was shut down in October 2004, and is now selling or using millions of those numbers to send unsolicited faxes, including selling it to Defendant FRI which uses these numbers to send faxes.

36. Matt Buecler and Frank Frappier were the top sales persons at Fax.com, and with Jeffrey Dupree, the head of sales at Fax.com, conspired to and are responsible for arranging for the sending millions of unsolicited fax for clients of Fax.com, including into D.C.

6

37. Buecler and Frappier personally initiated sending thousands of faxes into D.C. by physically initiating the computer or related equipment buttons that send/sent the faxes.

38. Upon information and belief Plaintiffs allege that Buecler and Frappier were the primary and possibly only sales persons at Fax.com to handle travel fax clients, and thus primarily or wholly responsible for approving the travel faxes received by Plaintiffs.

39. Buecler left Fax.com and created a new California company, Instant Response Marketing (IRM), which itself has engaged in massive and possibly still ongoing violations of the TCPA, and Frappier may have used or hired IRM for illegal marketing activities.

40. Garson and Katz used Everglades Enterprises to funnel money from Fax.com and related entities into various accounts, and eventually in some cases to banks outside the U.S.

41. Everglades Enterprises was used by Garson, Katz, Anzaroot and GCCC to hide the faxing enterprise, with relevant telecommunication bills sent to/through Anzaroot's office in MD.

42. Florida Reservations, Inc. (FRI) was a regular customer of Fax.com and Frank Frappier was the main sales person who handled their account, for which thousands of unsolicited faxes were sent to D.C., with the approval of Douglas Joseph Kaplan of FRI.

43. Each one of the Defendants separately and independently instruct both themselves and others to take actions that they know would and in fact did result in the sending of large numbers of unsolicited faxes into D.C., including to Plaintiffs, and were aware that the database used to send faxes contained fax numbers in D.C. that would be used, actively and regularly sent large numbers of fax ads to D.C. with the intent, hope and expectation that persons will respond favorably, thus pleasing the clients of the Defendants (and/or Fax.com) and allowing these Defendants to continue and increase their particular businesses on behalf of new and existing clients or the overall enterprise.

44. Each of the Defendants played a separate but important role in aiding and abetting the overall scheme of sending unsolicited faxes, and each profited from the scheme.

**Global Communications Consulting Corporation (GCCC) and Garry Anzaroot**

45. Kevin Katz, Eric Wilson and Garson primarily, and perhaps others, negotiated and entered into business relationships with GCCC, Franklin, Keller, Ricca, Clemente, and Anzaroot to arrange for GCCC to provide telecommunications services used to send of faxes into D.C.

7

46. Starting in 2002 GCCC carried the bulk of faxes sent by Fax.com and related spin off companies created or authorized by Katz and/or Wilson and/or Garson to send faxes.

47. In February 2003, Anzaroot, Franklin and Keller went to California and met with Katz to continue the enterprise and scheme, thus aiding and abetting the continued sending of unsolicited faxes, including faxes sent to D.C. and Plaintiffs.

48. No later than the February 2003 meeting, Anzaroot, Franlin and Keller were informed by Katz that the faxes they all helped send were unsolicited ads and therefore illegal, and that Fax.com was in serious legal trouble.

49. Anzaroot created the company United States (Voice) Mail & Fax Service Corporation ("US Mail") specifically to help the scheme of sending faxes and to attempt to avoid liability for activity he knew he was aiding and abetting and that was illegal. The company was a front, incorporated in Florida, but with no officers or Board, and actually run by Anzaroot from his office at 600 Reisterstown Road in Baltimore County, MD, including making or facilitating money payments for telecommunication or other accounts used in the faxing scheme.

50. In October 2003, Katz, Roth, Franklin, Keller, Clemente and Anzaroot met in the office of Garry Anzaroot in Baltimore County, Maryland in order to discuss and further the scheme.

51. At the Oct. 2003 meeting the attendees planned an operation to continue sending large numbers of faxes, and Matt Clemente of GCCC granted Katz a $400,000 monthly line of credit as part of this operation or plan. It was planned that Anzaroot would provide a billing platform for GCCC for invoicing the operation, and his company, US Mail would receive a fee from Fax.com for this, and Anzaroot would host Katz's and Fax.com's equipment and bee paid an additional fee.

52. Tom Roth's role in the operation planned at the Oct. 2003 meeting was to shepard and funnel money to or through Garson, Anzaroot and/or Everglade Enterprises to GCCC

53. Defendants' actions are an invasion of privacy, unfair, abusive and deceptive practices and violate the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. § 310.

54. Defendants provided substantial assistance, aid or encouragement to each other and other entities or persons, including a Richard Lamarre, to continue Defendants' lucrative businesses in or related to fax broadcasting, telecommunications services and/or marketing.

8

55. The violations alleged are part of a related, connected, intentional and systematic pattern and practice of conduct.

56. Plaintiffs sue FRI only for the travel faxes they sent directly or through the other Defendants.

57. GHRC believes the faxes it received pre-dated the involvement of Anzaroot, GCCC, Franklin, Keller, Clemete, Ricca, and FRI, and therefore do not sue these Defendants.

## THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)

58. The TCPA, 47 U.S.C. § 227(b)(1)(C) makes it unlawful for an person in the U.S. to "use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

59. The TCPA, 47 U.S.C. § 227(b)(3), provides an explicit private right of action for a minimum of $500 in statutory damages for each violation of the TCPA, and also provides for injunctive relief to enjoin violations of the TCPA.

60. The TCPA, 47 U.S.C. § 227(b)(3) explicitly provide for up to triple damages if the court finds that the Defendant willfully or knowingly violated the TCPA or FCC regulations.

61. Plaintiffs incorporates all previous paragraphs by reference as if fully set forth herein for all of the following Counts.

### COUNT 1 - Violations of the TCPA for sending Unsolicited Advertisements

62. Defendants' unsolicited advertisements sent to the Plaintiffs' fax machines were willful and knowing violations of the TCPA, 47 U.S.C. § 227(b)(1)(C).

63. With respect to the unsolicited advertisement faxes sent to Plaintiffs' fax machine as alleged herein, each page of a multiple-page fax that by itself independently constitutes an "unsolicited advertisement" as defined by the TCPA at 47 U.S.C. § 227(a)(4) which is sent without prior express invitation or permission is a separate violation of the TCPA

64. Defendants' actions in sending fax advertisements were willful and knowing.

### COUNT 2 - Violations of the TCPA and FCC's Identification Requirements

65. The unsolicited faxes sent by Defendants to Plaintiff and others in MD violate 47 U.S.C. § 68.318 because they do not clearly identify either (1) the business, entity or individual sending the faxed message, and/or (2) the number of the sending machine or the business, entity or individual.

66. Defendants' actions in assisting and the sending of fax advertisements without the required identification information were willful and knowing violations of the TCPA.

### THE D.C. CONSUMER PROTECTION AND PROCEDURES ACT

67. The D.C. consumer law, D.C. Code § 28-3904 et seq. prohibits unlawful trade practices, including but not limited to: (a) representing that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; (b) representing that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have; (e) misrepresenting as to a material fact which has a tendency to mislead; (f) failing to state a material fact if such failure tends to mislead; (s) passing off goods or services as those of another; (t) using deceptive representations or designations of geographic origin in connection with goods or services.

68. The D.C. Code § 28-3905(k)(1) authorizes a person, whether acting for the interests of itself, its members, or the general public, may bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia, and to recover treble damages, or $1,500 per violation, reasonable attorney's fees, punitive damages, and injunctive and other proper relief.

### COUNT 1 - Violations of the TCPA for sending Unsolicited Advertisements

69. Defendants' unsolicited advertisements sent to the Plaintiffs' fax machines were willful and knowing violations of the TCPA, 47 U.S.C. § 227(b)(1)(C).

70. With respect to the unsolicited advertisement faxes sent to Plaintiffs' fax machine as alleged herein, each page of a multiple-page fax that by itself independently constitutes an "unsolicited advertisement" as defined by the TCPA at 47 U.S.C. § 227(a)(4) which is sent without prior express invitation or permission is a separate violation of the TCPA

71. Defendants' actions in sending fax advertisements were willful and knowing.

### COUNT 2 - Violations of the TCPA Fax Identification Requirements

72. Most or all of the unsolicited faxes sent by Defendants to Plaintiffs and others in D.C. violate 47 U.S.C. § 68.318 because they do not clearly identify either (1) the business, entity or individual sending the faxed message, and/or (2) the number of the sending machine or the

business, entity or individual.

73. Defendants' actions in sending fax advertisements without the required identification information were willful and knowing violations of the TCPA.

### COUNT 3 - Violations of the D.C. Code

74. Plaintiffs are a 'consumer' as that term is defined at D.C. Code § 28-3901(a)(2).

75. Defendants' actions violate the D.C. Consumer Protection and Procedures Act, D.C. Code § 28-3904, Unlawful trade practices.

76. Each unsolicited advertisement fax sent by Defendants in violation of the TCPA, FCC regulations, or FTC regulations is a separate violation of the D.C. Code, § 28-3904.

77. Defendants violations of the D.C. Code were willful and knowing.

### DAMAGES AND RELIEF REQUESTED

Plaintiffs seek from the Defendants jointly and severally:

78. **COUNT 1**: Plaintiffs demand $1,500 for each unsolicited fax page, sent without prior express invitation or permission, and in willful and knowing violation of the TCPA, 47 U.S.C. § 227(b)(1)(C), and injunctive relief.

79. **COUNT 2**: Plaintiffs demand $1,500 for each unsolicited fax page, sent without prior express invitation or permission, and in willful and knowing violation of the TCPA fax identification requirements, 47 C.F.R. § 68.318, and injunctive relief.

80. **COUNT 3:** Plaintiffs request $1,500 pursuant for each unsolicited fax which constitutes an unlawful trade practice, pursuant to D.C. Code § 28-3905(k)(1)(A), and reasonable attorney fees pursuant to D.C. Code § 28-3905(k)(1)(B), and injunctive relief.

### Injunctive Relief

81. **COUNTS 1, 2 and 3:** Plaintiffs request injunctive relief pursuant to both the D.C. Code § 28-3905(k)(1)(C) and the TCPA, 47 U.S.C. § 227(b)(3), prohibiting the Defendants and/or any and all of its agents, including companies created or used by Defendants, from sending unsolicited advertisements via fax to Plaintiff and other persons in the District of Columbia, or from sending faxes with proper identification or other identifying information, or from sending faxes that in other way violate the TCPA or constitute an unlawful trade practice,

and from using a Faxcaster computer or any similar device for either sending faxes or obtaining fax or telephone numbers. Plaintiff requests injunctive relief prohibiting the personal Defendants from creating new companies, directly or indirectly, to perform the same function or activities enjoined in this suit.

**WHEREFORE** the Plaintiff seeks from the Defendants jointly and severally:

$1,500 for each unsolicited advertisement sent by Defendants without prior express permission, $1,500 for each fax sent without the required identification information, $1,500 under the DCCPPA for each unfair, misleading or deceptive unsolicited advertisement sent by Defendants, such damages totaling over $75,000 for each of Plaintiffs Kopff and Hoffman, and injunctive relief, reasonable attorney's fees, costs; pre-judgment interest, and other such relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs request a trial by jury for all matters triable by a jury.

        Respectfully submitted,

        /s/
_____
Michael C. Worsham, Esq.
1916 Cosner Road
Forest Hill, Maryland 21050
(410) 557-6192
michael@worshamlaw.com
D.C. Bar # 462830
April 19, 2005

*Attorney for Plaintiffs*