# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**JUDY KOPFF, et al.,**

  **Plaintiffs,**

    **v.**

**ROBERT BATTAGLIA, et al.,**

  **Defendants.**

</td><td>

**Civil Action No.  05-798 (JDB)**

</td></tr>
</table>

## MEMORANDUM OPINION

Plaintiffs Judy Kopff, John Hoffman, and the Guatemala Human Rights Commission/USA ("GHRC") have brought this civil action against sixteen defendants, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the District of Columbia Consumer Protection and Procedures Act ("CPPA"), D.C. Code § 28-3901 et seq., arising out of plaintiffs' receipt of dozens of unwanted facsimile transmissions. Defendant Michael Franklin moves to dismiss the claims against him for want of personal jurisdiction.  See Fed. R. Civ. P. 12(b)(2).  Defendant Robert Battaglia moves to dismiss the claims against him because, he asserts, they fail to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  Defendants Ahmed Sadiq and Garry Anzaroot move to dismiss the claims against them based on the absence of personal jurisdiction and the failure to state a claim.  For the reasons discussed below, the Court concludes that (1) the claims against ten still-unserved defendants must be dismissed for want of prosecution; (2) the claims against defendants Sadiq, Anzaroot, and Franklin must be dismissed because the Court lacks jurisdiction

over those individuals; and (3) the claims against defendant Battaglia under the CPPA and the claims against him under the TCPA for allegedly transmitting faxes in violation of sender identification regulations must be dismissed for failure to state a claim upon which relief may be granted, but the claims against Battaglia under the TCPA for allegedly sending unsolicited fax advertisements survive.

## BACKGROUND

Plaintiffs brought this action against fourteen individuals and two corporations for sending, conspiring to send, or aiding and abetting the sending of approximately one hundred unsolicited advertisements to plaintiffs' facsimile machines without their prior express invitation, permission, or consent.  The faxes advertised, among other things, travel services, loans, printer cartridges, stocks, cellular phone equipment and services, and money-making opportunities. Plaintiffs assert that Kopff received at least seventy-five faxes, Hoffman received at least twenty-one faxes, and GHRC received at least "several" faxes.  Compl. at ¶ 19.

The TCPA expressly prohibits the sending of unsolicited fax advertisements, 47 U.S.C. § 227(b)(1)(C), and it confers upon recipients of such prohibited faxes a private right of action to seek injunctive relief and a monetary award of $500 per violation (or actual damages, whichever is greater), 47 U.S.C. § 227(b)(3).  The damages may be increased to a maximum of $1,500 per violation for willful and knowing violations.  Id.[1]

---

[1] The private right of action created by the TCPA exists only in state court -- thus precluding the application of federal-question jurisdiction under 28 U.S.C. § 1331 -- but a federal court may hear the case if diversity jurisdiction exists, as it apparently does here.  See Kopff v. World Research, 298 F. Supp. 2d. 50, 55 (D.D.C. 2003).  Only Kopff alleges receiving a sufficient number of faxes to meet the $75,000 amount-in-controversy requirement for the exercise of diversity jurisdiction under 28 U.S.C. § 1332(a).  If each fax resulted in the maximum

The faxes involved in this case allegedly were sent by Fax.com, a now-defunct California-based company whose business included sending advertisements via facsimile. Compl. at ¶¶ 9, 29, 30, 31, 36.[2]  Fax.com allegedly utilized a "Faxcaster" computer network that randomly dialed phone numbers to determine whether a fax machine was connected.  Id. at ¶ 23. When the computer identified a fax machine on the line, the phone number was added to a database for the purpose of sending additional faxes in the future.  Id.  The database included telephone numbers for fax machines located in the District of Columbia.  Id. at ¶ 43.  Plaintiffs allege that each defendant in this action "played a separate but important role in aiding and abetting the overall scheme of sending unsolicited faxes, and each profited from the scheme."  Id. at ¶ 44.  Plaintiffs seek damages, jointly and severally, from defendants for their "personal actions and/or inactions and involvement in assisting with, facilitating, allowing and causing the violations or torts complained of ... and not solely because of their titles or positions as an

---

damages of $1,500, Kopff could recover $112,500 for the seventy-five faxes she received, whereas the most that Hoffman could recover would be $31,500 for the twenty-one faxes he received, and GHRC would be limited to some smaller recovery for the "several" faxes it received.  (These amounts are based on the assumption that a multipage fax constitutes a single "violation" within the meaning of 47 U.S.C. § 227(b)(3), notwithstanding plaintiffs' assertion that each page of a fax is a separate actionable violation of the TCPA, see Compl. at ¶ 63.)  Hoffman and GHRC nonetheless are permitted to bring their claims in this Court under the supplemental-jurisdiction statute so long as their claims "form part of the same case or controversy under Article III of the United States Constitution" as Kopff's original-jurisdiction claims, see 28 U.S.C. § 1367(a), and so long as their presence would be consistent with the requirement that there be complete diversity between the parties.  See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. ___, 125 S.Ct. 2611, 2620 (2005).  Nothing in the record at this time indicates that the Court cannot exercise subject-matter jurisdiction over the claims of Hoffman and GHRC under section 1367.

[2] Plaintiffs also allege that, in order to avoid lawsuits, Fax.com created several other companies to send fax advertisements.  Compl. at ¶ 31.  Plaintiffs, however, do not allege that defendants Battaglia, Sadiq, Anzaroot, or Franklin were associated with these other companies.

employee, manager, officer, or director of [a] corporate entit[y]." Id. at ¶¶ 15, 78-80.

**ANALYSIS**

**I.     Failure to Prosecute**

Plaintiffs filed their complaint on April 20, 2005.  The Federal Rules of Civil Procedure require that service of the summons and complaint be made upon a defendant within one hundred and twenty days after the filing of the complaint.  See Fed. R. Civ. P. 4(m).  If it is not, the Court may dismiss the action without prejudice as to the unserved defendants or direct that service be accomplished within a specified time.  Id.  Because it appeared from the record that at least ten of the named defendants had not been served within the period prescribed by Rule 4(m), the Court issued an order on November 18, 2005, that required plaintiffs to file with the Court by December 19, 2005, either (1) proof that these ten defendants had been served with the summons and complaint, or (2) a written explanation as to why plaintiffs had failed to complete service within one hundred and twenty days.

On December 20, 2005, plaintiffs submitted a statement confirming that, for a variety of reasons, they had been unable to serve these ten defendants "despite attempts to do so."  See Pls.' Response to Court Order Regarding Service at 1.  In light of plaintiffs' statement and the absence of any subsequent proof of service, the Court concludes that the claims against these ten unserved defendants -- Jeffrey Dupree, Frank Frappier, Joseph A. Garson, Kevin Katz, Erwin Dass, Doug Keller, Matt Clemente, Chris Ricca, Global Communications Consulting Corp., and Florida Reservations, Inc. -- should be dismissed without prejudice for want of prosecution, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

II.     **Personal Jurisdiction over Defendants Sadiq, Anzaroot, and Franklin**

A.      **Legal Requirements**

Defendants Sadiq, Anzaroot, and Franklin have moved to dismiss plaintiffs' claims against them for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). Personal jurisdiction -- the power of the Court to impose judgment on a particular defendant in the event liability is established -- is a threshold matter for the Court to resolve. The inquiry is independent of, and logically antecedent to, any determination of the sufficiency of the complaint. Whether or not the allegations would support a finding of liability if proven, there still must be a judicial determination (absent consent or waiver by the defendant) that each defendant is properly subject to the jurisdiction of the forum. Indeed, for purposes of resolving a challenge to personal jurisdiction, the Court may assume that the claims are meritorious.[3]

Plaintiffs bear the burden of establishing personal jurisdiction over each defendant. In order to meet that burden, plaintiffs must allege "specific facts upon which personal jurisdiction may be based," Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998), and they cannot rely on conclusory allegations, see GTE New Media Servs., Inc. v. Ameritech Corp., 21 F. Supp. 2d 27, 36 (D.D.C. 1998), remanded on other grounds sub nom. GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000). Moreover, plaintiffs cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant. See Rush v. Savchuk, 444 U.S. 320, 331-32 (1980) (rejecting aggregation

_____

[3] To the extent that the merits of the complaint overlap with jurisdictional facts, such an assumption may be necessary -- for example, where a determination of personal jurisdiction in a tort case requires a finding that the defendant caused tortious injury.

of co-defendants' forum contacts in determining personal jurisdiction because the requirements

for personal jurisdiction "must be met as to each defendant over whom a state court exercises

jurisdiction").  When considering challenges to personal jurisdiction, the Court need not treat all

of plaintiffs allegations as true and "may receive and weigh affidavits and any other relevant

matter to assist it in determining the jurisdictional facts."  United States v. Philip Morris Inc., 116

F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  See also Novak-Canzeri v. Al Saud, 864 F. Supp. 203,

206 (D.D.C. 1994) ("[T]he Court must accept Plaintiff's claims as true in ruling on a 12(b)(2)

motion, unless they are directly contradicted by an affidavit.").

     Personal jurisdiction comes in two distinct forms: "(1) general, 'all purpose' adjudicatory

authority to entertain a suit against a defendant without regard to the claim's relationship *vel non*

to the defendant's forum-linked activity, and (2) specific jurisdiction to entertain controversies

based on acts of a defendant that touch and concern the forum."  Steinberg v. Int'l Criminal

Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981).  This civil action implicates only the latter form,

as there is no suggestion that any of the defendants -- each of whom resides outside the District

of Columbia -- has a connection to the District of Columbia that would be strong enough to

support general jurisdiction.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.

408, 415-16 (1984) (explaining that, where a defendant's contacts with the forum are "continuous

and systematic," the forum will have jurisdiction over any matter involving the defendant).

     In order to establish specific jurisdiction over a non-resident defendant in a diversity case

such as this, plaintiffs must plead facts that (1) bring the case within the scope of the District of

Columbia's long-arm statute, D.C. Code § 13-423, and (2) satisfy the constitutional requirement

of due process.  <u>United States v. Ferrera</u>, 54 F.3d 825, 828 (D.C. Cir. 1995); <u>Crane v. Carr</u>, 814

F.2d 758, 762 (D.C. Cir. 1987).  The District's long-arm statute states, in pertinent part, that

courts may exercise jurisdiction over any person who, acting directly or through an agent,[4]

engages in the following conduct:

> (1)    transacts any business in the District of Columbia;

> (2)    contracts to supply services in the District of Columbia;

> (3)    causes tortious injury in the District of Columbia by an act or omission in the
>        District of Columbia; or

> (4)    causes tortious injury in the District of Columbia by an act or omission outside the
>        District of Columbia if the person "regularly does or solicits business, engages in
>        any other persistent course of conduct, or derives substantial revenue from goods
>        used or consumed, or services rendered, in the District of Columbia."

D.C. Code § 13-423(a)(1)-(4).[5]  In this case, plaintiffs' claims against Sadiq, Anzaroot, and

Franklin assuredly do not arise out of any contractual or transactional relationship involving the

---

[4] In cases where the claim is based on tortious injury, courts have interpreted the agency clause of section 13-423 to extend the reach of the long-arm statute to an individual whose only contact with the forum consists of the acts of a co-conspirator.  <u>See</u> <u>Jin v. Ministry of State Security</u>, 335 F. Supp. 2d 72, 78 (D.D.C. 2004).  This so-called "conspiracy jurisdiction" exists where a plaintiff can show (1) the existence of a civil conspiracy (i.e., a common scheme to participate in an unlawful act), (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator "within the forum, subject to the long-arm statute, and in furtherance of the conspiracy."  <u>Id.</u>; <u>Jung v. Ass'n of American Med. Colls.</u>, 300 F. Supp. 2d 119, 141 (D.D.C. 2004).  Plaintiffs in this case, however, do not advance this jurisdictional theory, and, in any event, they have not alleged that anyone associated with the defendants committed an overt act within the borders of the District of Columbia.

[5] The other provisions of the long-arm statute deal with ownership of real property and the existence of certain contractual or familial relationships that are not relevant for present purposes.

District.[6]  Instead, the claims here are based on alleged conduct in the nature of a tort; and because defendants' alleged conduct occurred solely outside the borders of the District, the only potentially applicable long-arm provision is section 13-423(a)(4), which permits jurisdiction where the defendant caused tortious injury within the District by an act or omission that occurred outside the District.

Courts have interpreted section 13-423(a)(4) to be *more* restrictive than the Due Process Clause of the Constitution -- meaning the District government has made a deliberate decision not to allow access to D.C. courts to every person who is injured here and otherwise could bring a claim for civil redress.  See Crane, 814 F.2d at 762 ("The drafters of this provision apparently intended that the (a)(4) subsection would not occupy all of the constitutionally available space.").[7]  Then-Judge Ruth Bader Ginsburg, writing for the D.C. Circuit in Crane, described subsection (a)(4) as requiring a "plus factor" by virtue of its additional requirement that the alleged tortfeasor "regularly do[] or solicit[] business" in the District, or "engage[] in [some] other persistent course of conduct" in the District, or "derive[] substantial revenue from goods used or consumed, or services rendered" in the District.  Id.; D.C. Code § 13-423(a)(4).  That plus factor, moreover, must involve conduct "separate from and in addition to the in-state injury." Crane, 814 F.2d at 762; Blumenthal, 992 F. Supp at 54.  In short, the "'something more' or 'plus

---

[6] Indeed, the absence of any existing commercial relationship between the parties may be essential to a recovery under the TCPA.  See Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (codifying the "established business relationship" exception to TCPA liability that previously had been incorporated by FCC regulation).

[7] This stands in contradistinction to, for example, section 13-423(a)(1), which is "coextensive ... with the Constitution's due process limit."  Crane, 814 F.2d at 762 (citing Mouzavires v. Baxter, 434 A.2d 988, 990-92 (D.C. 1981)).

factor' [that subsection (a)(4) requires] ... serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." <u>Crane</u>, 814 F.2d at 763.

Of course, the existence of a "plus factor" sufficient to satisfy section 13-423(a)(4) "does not itself supply the basis for the assertion of [specific] jurisdiction," because the plus-factor connection "need not be related to the act that caused the injury." <u>Id.</u>  But the Due Process Clause requires that plaintiffs demonstrate a sufficiently close connection between their asserted injuries and the defendant's contacts with the forum so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>GTE News Media Servs.</u>, 199 F.3d at 1347 (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)); <u>see also</u> <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.").  Although the defendant must intentionally establish contacts in the forum state, <u>Asahi Metal Indus. Co. v. Superior Court</u>, 480 U.S. 102, 108-09 (1987) (plurality opinion), it is not necessary that he physically enter the forum state as long as he "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)).

### B.    Challenges by Defendants Sadiq, Anzaroot, and Franklin

#### 1.    Ahmed Sadiq

At the time the relevant events took place, Ahmed Sadiq was an employee of Fax.com. Compl. at ¶ 10.  During his employment with Fax.com, Sadiq allegedly "wrote, reviewed or

approved of programs and queries and/or oversaw writing of computer programs or queries used by Fax.com to direct or determine where faxes [would be] sent." Id. at ¶ 34. Plaintiffs assert that Sadiq had "knowledge of and control over how Fax.com sent faxes, and was involved in managing the database of fax numbers." Id. According to plaintiffs, Sadiq was "fully aware" that unsolicited faxes were being sent and "generally about how faxes were sent out." Id. at ¶ 32.

In his motion to dismiss, Sadiq -- who resides in California -- contends that plaintiffs fail to allege that he individually had sufficient contacts with the District of Columbia for this Court to exercise personal jurisdiction over him in this case. The Court must agree. The complaint and plaintiffs' response to Sadiq's motion are entirely devoid of allegations that Sadiq had any contacts whatsoever with the District of Columbia -- either personally or in his corporate capacity -- let alone contacts sufficient to constitute purposeful availment of the privilege of conducting activities in the District. All plaintiffs allege is that Sadiq facilitated Fax.com's operation, Compl. at ¶ 34, was "fully aware" that Fax.com was sending unsolicited faxes, id. at ¶ 32, and knew that the Fax.com database contained phone numbers with the District of Columbia area code, id. at 43. But the constitutional standard for minimum contacts is not satisfied by "the mere likelihood that a product will find its way into the forum State" without any other relevant contacts between the defendant and the forum. World-Wide Volkswagen, 444 U.S. at 297. Similarly, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Asahi, 480 U.S. at 112. Thus, plaintiffs have failed to satisfy the Court that asserting personal jurisdiction over Sadiq would comport with due

process requirements.[8]

Moreover, plaintiffs also have failed to make a *prima facie* showing that there is a basis for personal jurisdiction over Sadiq under the District's long-arm statute.  Because there is no suggestion that Sadiq personally transacted any business or entered into any contracts with parties in the District (or indeed that he has ever set foot in the District), the only provision of the D.C. long-arm statute that is potentially available to plaintiffs with respect to the claims against Sadiq is section 13-423(a)(4), which covers tortious injury within the District caused by an act or omission that occurred outside the District.  Yet there is nothing in the complaint or in plaintiffs' subsequent filings to support a finding that one of the "plus factors" required by the statute -- regularly doing or soliciting business in the District, engaging in a persistent course of conduct directed toward the District, or deriving substantial revenue from goods used or consumed, or services rendered, in the District -- exists for Sadiq separate from and in addition to the faxes received by plaintiffs.[9]

Perhaps recognizing the insufficiency of Sadiq's individual connection with the District, plaintiffs attempt to obtain a form of vicarious personal jurisdiction over Sadiq based on the acts

---

[8] Plaintiffs correctly assert that, because Sadiq's *pro se* motion is not accompanied by an affidavit, the Court cannot credit the factual assertions therein.  Pls.' Opp'n to Sadiq Mot. to Dismiss at 1; see also Yang Rong v. Liaoning Provincial Gov't, 362 F. Supp. 2d 83, 90 (D.D.C.2005) (plaintiff's factual assertions are "'presumed to be true unless directly contradicted by affidavit' ... or other evidence") (internal citation omitted).  This proposition, however, is of no aid to plaintiffs where their own allegations are patently deficient with regard to jurisdiction over Sadiq.

[9] By contrast, plaintiffs allege that defendants Matthew Buecler and Frank Frappier "personally initiated sending thousands of faxes into D.C. by physically initiating the computer or related equipment buttons that send/sent the faxes," Compl. at ¶ 37, which may constitute an allegation of a persistent course of conduct directed toward the District.

of his employer and the allegation that, as Fax.com's chief programmer, Sadiq was "an integral and necessary player" in the faxing scheme.  See Pls.' Opp'n to Sadiq Mot. to Dismiss at 2.[10] Although, as a general rule, courts cannot exert jurisdiction over individual corporate officers or employees "just because the court has jurisdiction over the corporation," Flocco v. State Farm Mut. Auto. Ins. Co., 752 A.2d 147, 162 (D.C. 2000), in cases where the individuals are "more than employees of the corporation," courts have recognized an exception to this rule.  Covington & Burling, 2003 WL 21384825 at *6.  In Covington & Burling, another fax-advertising case involving Fax.com, the D.C. Superior Court exerted jurisdiction over two individual corporate employees of Fax.com based on the company's activities.  Id.  But in that case the defendants were the two founders and the only corporate officers of the company; they set company policies and procedures, were actively involved in day-to-day operations, and supervised all aspects of the company.  Id.  By contrast, the case of Wiggins v. Equifax, 853 F. Supp 500 (D.D.C. 1994), reflects an application of the requirement that "[p]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities ... be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity."  Id. at 503. In Wiggins, the court found it could not exercise personal jurisdiction over two supervisors in the corporate defendant's McLean, Virginia, office who allegedly directed and supervised subordinates engaged in illegal activities in the District.  Id.

      In the instant case, plaintiffs do not assert that Sadiq is a director or officer of the

---

[10] The Court will assume that plaintiffs have alleged sufficient facts to invoke jurisdiction over Fax.com based on its contacts with the District.  See Covington & Burling v. Int'l Marketing Research, Inc., 2003 WL 21384825 at *6 (D.C. Super. Ct.) (finding that Fax.com "purposefully availed itself of the privilege of conducting activities in the District of Columbia by sending [over one thousand] faxes to [plaintiff]," a District-based law firm).

company or that he had any role in directing or controlling company policy.  Rather, plaintiffs allege only that Sadiq was employed as a database manager by Fax.com and that he wrote or supervised the writing of programs used to select phone numbers for the company's database. Compl. at ¶¶ 10, 34.  Hence, Sadiq's role is more analogous to that of the supervisors in Wiggins than to that of the executives in Covington & Burling.  Plaintiffs provide a single document indicating that Sadiq was involved in discussions between Fax.com and another company regarding a payment plan, but this document, standing alone, is insufficient to support a conclusion that Sadiq was anything more than an employee.  See Pls.' Suppl. Mem. in Opp'n to Mots. to Dismiss, Ex. 1 at 2 (Letter from Franklin to Katz dated May 23, 2003).  Plaintiffs' argument that the D.C. Superior Court has asserted personal jurisdiction over other non-officer employees of Fax.com who, like Sadiq, lived and worked in California, Pls.' Opp'n to Sadiq Mot. to Dismiss at 2,[11] is likewise unavailing because the Court must resolve personal-jurisdiction issues based on the specific facts of each case and each defendant.  Rush, 444 U.S. at 332; Cellutech, Inc. v. Centennial Cellular Corp., 871 F. Supp. 46, 49 (D.D.C. 1994).

The central failure of plaintiffs' assertions relating to Sadiq is that they focus on his potential *liability* without alleging facts sufficient to support a judgment of liability *in this forum*. As noted above, the two inquiries are to be kept analytically distinct; personal jurisdiction does not automatically flow from the statement of a cognizable claim -- at least not in the District of Columbia on these facts.  Sadiq may very well be subject to civil liability under the TCPA for his conduct, but that does not mean that he can be held liable for that conduct in a court in the

---

[11] In support of this contention, Plaintiff submits two orders denying dismissal for lack of personal jurisdiction in Adler v. Katz, CA-03-8109 (D.C. Super. Ct.).

District of Columbia.  Based on the foregoing, the Court will grant Sadiq's motion to dismiss for want of personal jurisdiction.

### 2.      Garry Anzaroot

Plaintiffs allege that Defendant Garry Anzaroot played several roles in the illegal faxing operation.  First, plaintiffs allege that Anzaroot assisted with arranging or paying for "locations or billing for the computers and/or phone lines used in the Faxcaster network, including payment to persons for hosting computers used as part of the Faxcaster network."  Compl. at ¶ 33.  Plaintiffs allege that Anzaroot worked with the president of Fax.com, Kevin Katz, and others to arrange for Global Communications Consulting Corp. ("GCCC") to provide the telecommunications services that were used to send the illegal faxes.  Compl. at ¶ 45.[12]  Plaintiffs also allege that, starting in 2002, GCCC carried the bulk of the faxes sent by Fax.com and its spinoff companies, Compl. at ¶ 46, and that Anzaroot was aware that unsolicited faxes were being sent.  Compl. at ¶¶ 47-48.  Finally, plaintiffs allege that Anzaroot created a company called U.S. Voice Mail & Fax Services ("USVM"), which they allege he used to make payments for telecommunications accounts used in the faxing scheme.  Compl. at ¶ 49.

Anzaroot contends that this Court cannot exert personal jurisdiction over him because he lacks sufficient contacts with the District of Columbia.  Anzaroot Mem. in Supp. of Mot. to Dismiss at 4.[13]  Anzaroot is a resident of Maryland.  Anzaroot Aff. at ¶ 2.  He is the co-founder

---

[12] Anzaroot acknowledges that his company negotiated agreements between Fax.com and GCCC for telecommunications services.  Anzaroot Aff. at ¶ 13.

[13] In response to Anzaroot's *pro se* Motion to Dismiss, plaintiffs moved to strike the motion on the ground that it was prepared by a Maryland lawyer who is not admitted to practice in this Court rather than by Anzaroot himself (a fact that Anzaroot volunteered, see Anzaroot Mem. in Supp. of Mot. to Dismiss at 8).  The Federal Rules of Civil Procedure provide that a

and an employee of Anzaroot & Miller, Inc. ("AMI"), a Maryland corporation with its only office

in Pikesville, Maryland.  Anzaroot Mem. in Supp. of Mot. to Dismiss at 5.  Anzaroot states that

AMI did not conduct business in the District and had no customers in the District.  Anzaroot Aff.

at ¶ 4.  Furthermore, Anzaroot states that he does not own any real property in the District.  Id. at

¶ 5.

Plaintiffs have not alleged in their complaint or in their opposition to Anzaroot's Motion

to Dismiss that Anzaroot or AMI transacted any business in the District, that Anzaroot or AMI

entered into any contracts in the District, or that Anzaroot or AMI caused tortious injury in the

District based on acts committed *within* the District.  Therefore, as with Sadiq, the only

potentially available basis for personal jurisdiction over Anzaroot would be subsection (a)(4) of

the D.C. long-arm statute, based on tortious injury in the District caused by acts committed

outside the District.

Once again, however, plaintiffs fail to provide the requisite "plus factor" to satisfy the

requirements of that provision of the long-arm statute -- the "something more" besides the

---

Court, on its own initiative or on a party's timely motion, may "order stricken from any pleading
any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed.
R. Civ. P. 12(f).  Courts, however, "disfavor motions to strike," and will grant them only where
there is a very good reason for doing so.  Nwachukwu v. Rooney, 362 F. Supp. 2d 183, 189-90
(D.D.C. 2005), aff'd, No. 05-7106, 2006 U.S. App. LEXIS 3128 (D.C. Cir. Feb. 8, 2006).
Additionally, Rule 12(f) applies only to "pleadings," and a motion to dismiss is not a pleading,
see Fed. R. Civ. P. 7(a).  A motion to strike "is not a vehicle to penalize parties and prevent the
court from considering a party's motion."  Nwachukwu, 362 F. Supp. 2d at 190.  Plaintiffs assert
that "[t]o allow such a filing ... would be tantamount to the Court sanctioning unlicensed practice
of law."  Pls.' Mot. to Strike at 2.  Even if it did constitute unauthorized practice of law for an
attorney to draft a filing for a client to submit *pro se* in a jurisdiction where the attorney is
unlicensed -- and the Court expresses no opinion on that legal proposition -- the appropriate
remedy for such conduct would be a Bar disciplinary proceeding against the attorney, not a
motion to strike.

alleged injury that would connect the defendant with the District.  See Crane, 814 F.2d at 763.

Plaintiffs do not allege any "persistent course of conduct" *by Anzaroot* that was directed

specifically toward the District of Columbia.  Although they allege that Anzaroot knew that

Fax.com was sending faxes to the District, they do not allege that he personally undertook to

send any faxes to D.C. (which, if done on a large enough scale, might support personal

jurisdiction over the sender, as in Covington & Burling, 2003 WL 21384825).  Rather, they

allege that his "role ... was as the arranger of communications services and hosting for [Fax.com],

which engaged in a large scale fax broadcasting operation used to send millions of unsolicited

fax advertisements, including many to Plaintiffs."  Pls.' Opp'n to Anzaroot Mot. to Dismiss at 6.[14]

Not only is there nothing about those alleged arrangements that would suggest a particular focus

on the District,[15] but to the extent Anzaroot's conduct *was* directed at the District, it might not

meet the requirement that it be "separate from and in addition to the in-state injury."  See Crane,

814 F.2d at 762.  As for the possibility that Anzaroot derived substantial revenue from goods

used or consumed or services rendered in the District, plaintiffs allege that Anzaroot received a

fee for invoicing the faxing operation, Compl. at ¶ 51, which might be considered as revenue

---

[14] Again, this allegation stands in contrast to the allegation against defendants Buecler and
Frappier at paragraph thirty-seven of the complaint.

[15] Plaintiffs do provide a document that lists rates offered by GCCC to USVM for
locations throughout the United States, including Washington, D.C.  See  Pls.' Suppl. Mem. in
Opp'n to Mots. to Dismiss, Ex. 2 at 3-10.  Plaintiffs argue that because the District is included in
this list, Anzaroot specifically targeted D.C. to receive faxes.  Pls.' Suppl. Mem. in Opp'n to
Mots. to Dismiss at 2.  This inference, however, is not warranted when the document is viewed
in context.  The document reflects an offer of rates for nearly two hundred locations throughout
the United States, including cities in every state but Delaware, as well as locations in Puerto Rico
and the Virgin Islands.  Nowhere in the document is there a specific indication that the District of
Columbia -- or any other location, for that matter -- is of particular importance.

-16-

from advertising services rendered in the District, but they do not indicate how much of that alleged fee might be attributable to faxes to the District of Columbia, and thus provide the Court with no basis for concluding that Anzaroot derived "substantial" revenue from services rendered in the District.  Nor do plaintiffs allege facts that would allow the Court to conclude that Anzaroot regularly did or solicited business in the District.  Plaintiffs' supplemental submission in opposition to the motion to dismiss includes a number of documents related to Anzaroot's alleged involvement with USVM.  Among those documents is an amendment to a "retail services agreement" between GCCC and USVM, signed by Anzaroot as president of USVM, describing the provision of circuits providing "fax blast" services.  See Pls.' Suppl. Mem. in Opp'n to Mots. to Dismiss, Ex. 2 at 1-2.  But neither this document, nor any of the other documents supplied by plaintiff, demonstrate any particular connection between Anzaroot, AMI, or USVM and the District of Columbia.

Even putting aside the requirements of the long-arm statute, plaintiffs have failed to establish that Anzaroot's contacts with the District meet the minimum threshold for due process. The Supreme Court has said that the Fifth Amendment prohibits a defendant from being haled into court "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or third person.'" Burger King Corp., 471 U.S. at 475 (citations omitted).  In World Wide Volkswagen, for example, the plaintiff bought a car in New York and was involved in an accident while driving through Oklahoma.  444 U.S. at 288.  The plaintiff filed suit against the New York dealership in an Oklahoma court, even though the only connection between the defendant and the state was that the accident occurred there.  See id. at 288-89.  The Supreme Court held that the court could not exercise personal jurisdiction over the

defendant, because, although it was foreseeable that a car purchased from a New York dealer could be involved in an accident while passing through Oklahoma, the only relevant consideration was whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297.  Anzaroot's role in the faxing operation resembles that of the car dealer in World Wide Volkswagen.  Anzaroot assisted in providing the phone lines, but ultimately -- according to plaintiffs' own allegations -- it was Fax.com, not Anzaroot, that selected the locations to receive faxes, maintained the database of phone numbers, and initiated the fax transmissions.  Although it may have been foreseeable to Anzaroot that residents of Washington, D.C., could receive faxes via the infrastructure he provided, that alone is not sufficient to show that he purposefully availed himself of the privilege of conducting activities in the District of Columbia.  Also, like the defendant in World Wide Volkswagen, Anzaroot's only contact with the forum was through another party -- in this case, Fax.com.

In sum, plaintiffs have failed to come forward with facts sufficient to support this Court's exercise of jurisdiction over Anzaroot.  The Court therefore will grant Anzaroot's motion to dismiss for want of personal jurisdiction.

### 3.      Michael Franklin

Plaintiffs allege that Michael Franklin was the president of GCCC, a New Jersey-based telecommunications service provider.  Compl. at ¶¶ 12-13.  Plaintiffs further allege that GCCC was the primary carrier of faxes sent by Fax.com and related companies, and that Franklin was informed that illegal unsolicited faxes were being sent.  Compl. at ¶¶ 46, 48.  Finally, plaintiffs allege that, despite this knowledge, Franklin met with Kevin Katz, Fax.com's president, and

-18-

Garry Anzaroot in October 2003 to discuss plans for continuing the faxing operation using GCCC's services.  Compl. at ¶¶ 50-51.  Plaintiffs do not allege any further facts relevant to jurisdiction over Franklin.

Franklin asserts that plaintiffs' allegations concerning his participation in the faxing operation are nothing more than general and conclusory statements that do not support jurisdiction over him by this Court in this case, and he has moved for dismissal of all claims against him for want of personal jurisdiction.  In an affidavit accompanying his motion, Franklin states that he is not and has never been a resident of the District of Columbia and that he does not own real property in the District or stock in any D.C. corporation.  Franklin Aff. at ¶¶ 2, 6-7.  Franklin also states that, while he was employed at GCCC, he did not attend meetings with customers or other employees in the District, nor did he otherwise travel to the District for any reason.  Id. at ¶ 4.  Finally, Franklin states that he has not personally transacted business in the District, either directly or through an agent.  Id. at ¶ 5.

As with Sadiq and Anzaroot, the only possible basis for personal jurisdiction over Franklin in this case is section 13-423(a)(4).[16]  Plaintiffs, however, once again have supplied no facts to support a conclusion that Franklin individually satisfies any one of the requisite plus factors under subsection (a)(4).  Plaintiffs have not alleged that Franklin regularly conducts or

_____

[16] Although plaintiffs, apparently in an attempt to invoke subsection (a)(1) of the long-arm statute, assert in opposition to Franklin's motion to dismiss that "[d]efendants ... transacted business in [the District of Columbia] by setting up Faxcaster computers and then using these to send many unsolicited fax advertisements," see Pls.' Opp'n to Franklin Mot. to Dismiss at 6, plaintiffs may not aggregate factual allegations to establish personal jurisdiction.  Rush, 444 U.S. at 331-32.  Plaintiffs have not alleged specific facts indicating that Franklin himself transacted business in the District of Columbia, contracted for services here, or committed a tortious act in the District that caused injury here.

solicits business in the District or that he derives substantial revenue from goods used or

consumed or services rendered in the District, and (as was the case with Anzaroot) the closest

plaintiffs can come to alleging a "persistent course of conduct" directed toward the District is the

transmission of the faxes at issue in this case (and perhaps others).  But again plaintiffs do not

allege that Franklin personally undertook to send any faxes to the District, and, even if he had

personally initiated the faxes to plaintiffs, it still is not clear that such conduct would be "separate

from and in addition to the in-state injury," as required by subsection (a)(4).  See Crane, 814 F.2d

at 762.  Accepting as true all of plaintiffs' allegations against Franklin, it is clear that the

"inforum impact [of his conduct was] an isolated event and [he] otherwise has no, or scant,

affiliations with the forum."  See Crane, 814 F.2d at 763.  Therefore, there is no basis to find

jurisdiction over Franklin individually under the long-arm statute.

      Even if the long-arm statute could reach him, Franklin contends that he has not engaged

in any activity related to plaintiffs' claims that could be described as "purposeful availment" of

the privileges and protections of District law, and therefore that it would offend due process to

assert jurisdiction over him here.  Franklin Mem. in Supp. of Mot. to Dismiss at 7.  Franklin

argues that providing telephone lines that were used by others to send unsolicited faxes is not an

activity purposefully directed toward the District.  Id.  The Court agrees, for the reasons

articulated above with respect to defendant Anzaroot.  Like Anzaroot, Franklin assisted Fax.com

in obtaining phone lines.  Like Anzaroot, Franklin did not decide who would receive the faxes.

Although it may have been foreseeable to Franklin that the lines could be used to send faxes to

the District of Columbia, that is insufficient to establish that "he should reasonably anticipate

being haled into court" here.  See World Wide Volkswagen, 444 U.S. at 297.[17]  In addition, even if the Court were to assume that Franklin's leadership role in his company, GCCC, was so substantial that GCCC's contacts can be treated as Franklin's contacts, plaintiffs have offered no factual averments to support the conclusion that this New Jersey-based company had contacts with the District that would allow this Court to exercise jurisdiction over it (and, vicariously, over Franklin).

## IV.   Jurisdictional Discovery

In anticipation of the possibility that the Court would conclude plaintiffs had failed to meet their burden of establishing jurisdiction, plaintiffs have requested discovery in aid of jurisdiction as an alternative to dismissal of the claims against Anzaroot and Franklin.  See Pls.' Opp'n to Anzaroot Mot. to Dismiss at 10; Pls.' Opp'n to Franklin Mot. to Dismiss at 9.  "As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction."  Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991).  Jurisdictional discovery, however, is justified only if the plaintiff reasonably "demonstrates that it can supplement its jurisdictional allegations through discovery."  GTE New Media Servs., 199 F.3d at 1351.  In this case, however, the Court sees no reason to permit such discovery, given that plaintiffs' counsel evidently has engaged in substantial discovery in separate litigation regarding the operations of

---

[17] Plaintiffs' assertion that jurisdiction in this forum is consistent with due process solely because Franklin is subject to personal jurisdiction in the Circuit Court of Montgomery County, Maryland, which is "just a short drive or [subway] ride away" from the District, has no merit whatsoever.  See Pls.' Opp'n to Franklin Mot. to Dismiss at 3.  The Court is aware of no legal authority that would support the proposition that mere proximity to the forum is sufficient to confer personal jurisdiction, irrespective of political borders.

Fax.com and the activities of these defendants in particular.  See Pls.' Suppl. Mem. in Opp'n to

Mots. to Dismiss at 1 (referring to documents produced by Franklin to plaintiffs' counsel "as

discovery in another TCPA unsolicited fax case" in Montgomery County, Maryland); Anzaroot

Mem. in Supp. of Mot. to Dismiss at 8 ("This is the third suit that [plaintiffs' counsel] has

brought against me ....").  Plaintiffs simply have not demonstrated that additional discovery is

likely to produce previously unavailable evidence relevant to the jurisdictional question.  Hence,

the Court will deny their request for jurisdictional discovery.

## V.       Failure to State a Claim[18]

Defendant Battaglia moves to dismiss plaintiffs' claims against him on the ground that

they fail to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Such a motion will be granted only if "it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d

1245, 1254 (D.C. Cir. 1987).  All that the Federal Rules of Civil Procedure require of a

complaint is that it contain "'a short and plain statement of the claim' that will give the defendant

fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Dura

Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005) (quoting Conley, 355 U.S. at 47).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be

liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics and Coordination

Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir.

---

[18] Because the Court finds that it lacks personal jurisdiction over defendants Sadiq and
Anzaroot and has dismissed the claims against them under Rule 12(b)(2), it does not reach their
Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted.

1979).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Conclusory legal and factual allegations, however, need not be considered by the court.  Domen v. Nat'l Rehabilitation Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

### A.    TCPA Claims

#### 1.    Improper Fax Identification

Plaintiffs assert an entitlement to damages under the TCPA due to defendants' alleged failure to comply with Federal Communications Commission ("FCC") regulations that require faxes to identify properly the individual or entity sending the message and to provide the phone number of the sender.  Compl. at ¶¶ 65-66 (citing 47 C.F.R. § 68.318).  The TCPA, however, does not create a private right of action for every violation of its provisions, but instead creates such a right only in specific circumstances.  Congress chose to allow private suits based on alleged noncompliance with fax-advertising restrictions, see 47 U.S.C. § 227(b)(3) ("A person or entity may ... bring ... an action based on a *violation of this subsection* or the regulations prescribed *under this subsection* ....") (emphasis added), and based on alleged transgressions by telephone solicitors, see 47 U.S.C. § 227(c)(5) ("A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed *under this subsection* may ... bring ... an action based on a violation of the regulations prescribed *under this subsection* ....") (emphasis added).  But Congress plainly opted *not* to permit a private civil action for violations of the fax-sender identification requirements when it omitted any mention of such a right in the statutory provision that instructed the FCC to

-23-

revise the "technical and procedural standards for telephone facsimile machines" so as to mandate the transmission of identifying information with every fax.  See 47 U.S.C. § 227(d)(2).

The fax identification regulations upon which plaintiffs rely, 47 C.F.R. § 68.318, were issued pursuant to subsection (d) of section 227, and thus there is no private right of action under the TCPA for violation of those regulations.  Adler v. Vision Lab Telecomm., Inc., 393 F. Supp. 2d 35, 38-39 (D.D.C. 2005) (citing Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44,144, 44,170 (July 25, 2003)).  Hence, plaintiffs have failed to state a claim upon which relief may be granted under the TCPA to the extent that they rely on asserted violations of the fax identification regulations.

### 2.      Sending Unsolicited Fax Advertisements

Plaintiffs also assert a right to recovery under the TCPA based on defendants' alleged violations of the prohibition on sending unsolicited fax advertisements.  Compl. at ¶¶ 62-64.  The TCPA makes it "unlawful for any person within the United States ... to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. 227(b)(1)(C).  The essence of Battaglia's Rule 12(b)(6) motion is that the conduct plaintiffs allege he engaged in, even if true, does not qualify as "us[ing] ... [a] device to send" a fax, within the meaning of the statute.

Plaintiffs allege that Battaglia worked on behalf of Fax.com, or companies associated with Fax.com, to arrange and pay for hosting of computers and telephone lines used in the Faxcaster network.  Compl. at ¶¶ 3, 26.  Battaglia, they contend, was reimbursed for these services by Kevin Katz, president of Fax.com, or companies controlled by Katz.  Id. at ¶ 26. Plaintiffs further allege that Battaglia received complaints about the faxes and was aware that

people were upset at receiving calls from the Faxcaster network.  Id. at ¶ 27.  Plaintiffs also assert

that Battaglia was "fully aware that unsolicited faxes were being sent" and was generally aware

of how faxes were sent out.  Id. at ¶ 32.  Battaglia counters that he was not involved in the fax

transmission beyond making arrangements for people to host computers capable of sending faxes

and arranging for installation of telephone lines for those computers.  See Battaglia Mem. in

Supp. of Mot. to Dismiss at 1.  He argues that, because plaintiffs do not allege that he created or

controlled the content of the faxes or that he determined when and where the faxes would be

sent, he was merely a "service provider" who is not subject to liability under the TCPA.  Id. at 2.

As plaintiffs correctly point out, however, the TCPA has not been so narrowly construed

by courts or by the FCC, the agency charged with administering the statute.  See Pls.' Opp'n to

Battaglia Mot. to Dismiss at 2.  Although the FCC has stated that "the entity or entities on whose

behalf facsimiles are transmitted are ultimately liable for compliance with the [TCPA]" and that,

therefore, fax broadcasters who operate like common carriers "are not liable for compliance with

this rule," 10 F.C.C.R. 12,391, 12,407 (1995); In the Matter of Fax.com, Inc., 17 F.C.C.R.

15,927, 15,935 (2002) ("Fax.com Notice of Apparent Liability"), the agency also has made clear

that this exemption for a fax broadcaster only exists "in the absence of 'a high degree of

involvement or actual notice of an illegal use and failure to prevent such transmissions,'"

Fax.com Notice of Apparent Liability, 17 F.C.C.R. at 15,935.  See also 47 C.F.R. §

64.1200(a)(3)(ii) ("A facsimile broadcaster will be liable for violations ... if it demonstrates a

high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to

prevent such facsimile transmissions.");  In the Matter of Rules and Regulations Implementing the

Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8780 (1992) (discussing

common-carrier liability under the TCPA and applying a standard of "a high degree of involvement or actual notice" and failure to act).[19]

This Court must afford substantial deference to a federal agency's interpretation of a statute that is within the agency's purview where, as here, the statute is silent or ambiguous on the specific issue presented.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984).  The only question for the Court in such a situation is "whether the agency's [interpretation] is based on a permissible construction of the statute." Id.  To warrant deference, the agency's construction of the statute "need not be the best or most natural one by grammatical or other standards," but instead it "need be only reasonable." Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991) (citation omitted).  Although there is legislative history to indicate an intent by Senate drafters of the TCPA that only the "originator or controller of the content of the call or message" would be liable under the statute, S. Rep. No. 102-178, at 9 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1977, the text of the statute does not make that clear, and this Court cannot elevate a single statement in a congressional report over an agency's interpretation of a statute where the agency's construction of the statutory language is reasonable, as it is here.

Moreover, in the few cases that deal with such fax-broadcasting companies, courts have extended liability to the company that transmits the unsolicited faxes, as well as the entity on

---

[19] Regardless or whether the term "fax broadcaster," "service provider," or "common carrier" is used, the FCC "has focused on the nature of an entity's activity rather than any label that that entity may claim." Fax.com Notice of Apparent Liability, 17 F.C.C.R. at 15,935.  TCPA regulations have defined a "facsimile broadcaster" as "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee."  47 C.F.R. § 64.1200(f)(4).

whose behalf the fax is sent.  See, e.g., Texas v. American BlastFax, 164 F. Supp. 2d 892, 896-97

(W.D. Tex. 2001); Covington & Burling, 2003 WL 21384825 at *8.   In the American Blastfax

case, the court found such a company liable under the TCPA because "[its] business center[ed]

around using a fax machine to send unsolicited advertisements -- the precise conduct outlawed

by the TCPA." 121 F. Supp. 2d at 1089.  The court further opined that the company, American

Blastfax, "[wa]s more than a common carrier or service provider [because it] maintain[ed] and

use[d] a database of recipient fax numbers, actively solicit[ed] third party advertisers and

presumably review[ed] the content of the fax advertisements it sen[t]....  Blastfax [wa]s far more

than a mere conduit for third party faxes." Id. at 1089-90.  The court then concluded that "[i]t

would circumvent the purpose of the TCPA to exempt Blastfax from potential liability on the

theory that it plays no role in sending the advertisements at issue." Id. at 1090.  The FCC, in an

Order of Forfeiture against Fax.com, endorsed the district court's conclusion "that a fax

broadcaster that serves as 'more than a mere conduit for third party faxes' is liable under the

TCPA." In the Matter of Fax.com, Inc., 19 F.C.C.R. 748, 755 n.36 (2004).

  Here, plaintiffs have alleged that Battaglia was more than a mere conduit for the faxes

they received and that he had a high degree of involvement in, and actual notice of, the allegedly

unlawful activity and nonetheless failed to take steps to prevent it.  Battaglia, for his part, has

denied knowing that the telephone lines he provided were being used for an illegal purpose.  That

denial, however, merely reflects a factual dispute that, at this stage of the litigation, must be

resolved in plaintiffs' favor because the Court must assume the truth of plaintiffs' factual

allegations.  Accordingly, the Court will deny Battaglia's motion to dismiss the TCPA claims that

relate to the alleged transmission of unsolicited fax advertisements.

### B.        CPPA Claims

Plaintiffs assert that Battaglia's actions in facilitating the transmission of unsolicited fax advertisements, see Compl. at ¶¶ 23-28 (detailing the allegations against Battaglia), also constitute independent violations of the CPPA, D.C. Code § 28-3901 et seq., which regulates transactions between consumers and merchants in the District of Columbia.  See Indep. Communications Network, Inc. v. MCI Telecomm. Corp., 657 F. Supp. 785, 787 (D.D.C.1987) (CPPA "was intended to apply only to trade practices arising out of the supplier-purchaser relationship") (citing Howard v. Riggs Nat'l Bank, 432 A.2d 701, 709 (D.C. App. 1981)).  For the reasons articulated by Judge Huvelle in a similar case, the Court concludes that plaintiffs fail to state a claim under the CPPA because there is no consumer-merchant relationship within the meaning of the statute, and therefore Battaglia's actions cannot qualify as actionable trade practices.  See Adler, 393 F. Supp. 2d at 39-40.  Accordingly, Battaglia's motion to dismiss with respect to the claims under the CPPA will be granted.

### CONCLUSION

Upon consideration of the foregoing, and the entire record herein, the Court will (1) dismiss without prejudice all claims against the ten unserved defendants; (2) grant the motions to dismiss for want of personal jurisdiction filed by defendants Sadiq, Anzaroot, and Franklin; and (3) grant in part and deny in part defendant Battaglia's motion to dismiss for failure to state a claim upon which relief may be granted.  A separate order has been issued on this date.

_/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:   __March 29, 2006__

Copies to:

Michael C. Worsham
1916 Cosner Road
Forest Hill, MD  21050
Email: michael@worshamlaw.com

*Counsel for plaintiffs*


David Zachary Kaufman
KAUFMAN LAW, P.C.
11350 Randall Hill Road, Suite 650
Fairfax, VA 22030
Email: david@dzklaw.com

*Counsel for defendant Battaglia*


Price Owen Gielen
NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER
One South Street
Baltimore, MD  21202
Email: pog@nqgrg.com

*Counsel for defendant Franklin*


Garry Anzaroot
8925 Grummore Circle
Baltimore, MD  21208

*Defendant*


Ahmed Sadiq
1409 South Jasmine Avenue
Ontario, CA 91762-5301

*Defendant*